STATE OF MAINE
CUMBERLAND, ss.

JUL 5  2 25 PM '01

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-094
REC-CUM-7/5/2001

DURASTONE, INC.,

Appellant

v.

J.P. MARTIN & SONS
CONSTRUCTION CORP.,

Appellee

**ORDER**

## FACTUAL BACKGROUND

On August 27, 1998, Appellant Durastone, Inc. and Appellee J.P. Martin & Sons entered into a contract in which Durastone agreed to furnish and J.P. Martin agreed to purchase architectural precast concrete. By purchase order dated September 23, 1998, J.P. Martin requested that Durastone furnish and deliver materials for a State Police barracks being built in Houlton, Maine. This purchase order specifically stated the materials were to be delivered by August 15, 1999. The delivery date, according to J.P. Martin, was crucial because the project had to be completed by January 15, 2000. A set of plans was sent to Durastone on October 1, 1998 for use in preparing shop drawings for approval by J.P. Martin's architect.

In both January and February of 1999, J.P. Martin inquired why the shop drawings had not been sent. Durastone responded to both inquiries that although the drawings had not yet been started, they would begin very soon. J.P. Martin called again around March 1, 1999 and told Durastone that other arrangements would have to be made if the shop drawings were not received. Durastone indicated that they had started on the drawings and would have them completed

and sent within a week.

The drawings were received on March 10, 1999 and immediately submitted to the architect. The architect returned them on March 31, 1999 with a note to "revise and resubmit." J.P. Martin immediately returned the drawings to Durastone, who stated they would make revisions and resubmit.

From the beginning of April to the first part of June, J.P. Martin continually contacted Durastone regarding the status of the revised shop drawings. Each time, Durastone advised they had not had a chance to look at them. When J.P. Martin finally received the revised drawings on June 21, 1999 and resubmitted them to the architect, they were returned on July 6, 1999 with the same "revise and resubmit" notice stamped on them. The drawings were then returned to Durastone with a request that they immediately be revised because the drawings were past the date required for fabrication in order to meet the construction deadline.

Despite J.P. Martin's request, Durastone would not set a definite delivery schedule until the shop drawings were approved. J.P. Martin received the revised drawings on August 5, 1999 and sent them to the architect for approval. They were sent back again on August 12, 1999 by the architect with a notation to "revise as noted."

Over the next two weeks, J.P. Martin attempted to speak to Durastone's representatives to determine a possible delivery date but the telephone calls were not returned. On September 8, 1999, J.P. Martin sent a letter rescinding the contract. At the hearing before the District Court, Mr. Martin acknowledged that he neither

2

spoke with anyone from Durastone about the cancellation before he sent the letter nor followed up after he sent the letter.

Mr. Joyce testified on behalf of Durastone that as of the time that the cancellation arrived, all of the engineering and drafting had been completed and Durastone was ready to make the molds from which the product could be created.

In a letter dated September 15, 1999, Durastone informed Mr. Martin that their draftsman had released shop tickets to have molds built on August 31, 1999 and that mold making was in progress as of September 6, 1999. This letter indicated that production could start on September 20, 1999, with completion on October 22, 1999, two months past the contractual delivery date of August 15, 1999. Mr. Martin testified that he never received this letter and that if he had known that he could have the product within six weeks of September 15, he would not have canceled and would have instead accepted the product.

On July 20, 2000, Durastone filed a statement of claim, seeking a small claims judgment for the out-of-pocket expenses associated with engineering and drafting services. After a hearing on October 10, 2000, the District Court entered judgment for J.P. Martin.

## DISCUSSION

The Uniform Commercial Code, 11 M.R.S.A. §§ 1-101 et seq. (1995 & Supp. 2000) ("UCC"), governs this contract because it concerns the sale of goods. See id. §§ 2-102 & 2-105. Under the UCC, J.P. Martin's cancellation of the contract was a proper response to Durastone's breach by failing to make timely delivery. See id. §§ 2-106(4)

3

& 2-711(1). This cancellation had the effect of discharging any obligations that were still executory on both sides. Id. § 2-106(3) & (4). The District Court therefore properly granted judgment to J.P. Martin.

The entry is

The judgment of the District Court is AFFIRMED.

Dated at Portland, Maine this 5th day of July, 2001.

Robert E. Crowley
Justice, Superior Court

Date Filed ____12-01-00____ ____Cumberland____ Docket No. _AP00-94_
County

Action ____Appeal from District Court____

DURASTONE INC.

J.P. MARTIN & SONS CONSTRUCTION COR

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Deborah Shelles Cameron Esq.<br>William Willard, Esq.<br>P.O. Box 9729<br>Portland ME 04104 | Richard Engels, Esq.<br>P.O. Box 70<br>Presque Isle ME 04769<br><br>John Walker, Esq.<br>1321 Washington Ave<br>Portland, ME 04101 |

Date of
Entry